**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| KLEIN TOOLS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. |
| | ) | |
| v. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| MILWAUKEE ELECTRIC TOOL CORPORATION, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

# **COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Klein Tools, Inc. ("Klein Tools" or "Plaintiff") files this Complaint for Patent Infringement and Demand for Jury Trial against Milwaukee Electric Tool Corporation ("Milwaukee" or "Defendant"). Plaintiff alleges as follows:

## **NATURE OF THE CASE**

1. Plaintiff brings claims under the patent laws of the United States, 35 U.S.C. § 1, *et seq.*, for infringement of the following United States patent: U.S. Patent No. 12,268,265 (the "'265 Patent").

## **THE PARTIES**

2. Klein Tools is a corporation organized under the laws of the State of Delaware, with its principal place of business at 450 Bond Street, Lincolnshire, Illinois.

3. Milwaukee is a corporation organized under the laws of the State of Delaware, with its principal place of business at 13135 West Lisbon Road, Brookfield, Wisconsin.

## **JURISDICTION & VENUE**

4. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338.

5. The Court has personal jurisdiction over Milwaukee in this action because Milwaukee is incorporated in the State of Delaware and has a registered agent in Wilmington, Delaware. Milwaukee's registered agent is Corporation Service Company located at 251 Little Falls Drive, Wilmington, Delaware.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1400(b) because Milwaukee is incorporated within this District.

## BACKGROUND

7. Klein Tools was founded in 1857 by German immigrant Mathias Klein, who made his way west to set up shop in Chicago's bustling downtown business district. Since 1857, Klein Tools has been operated by Mathias Klein and his descendants to the sixth generation. Klein Tools' product line has grown during this time, from its renowned pliers and hand tools for the burgeoning American telecommunications and electrical industries, to a wide range of tools and occupational protective equipment used across construction, electronics, mining, and general industry.

8. Since 1857, Klein Tools has been manufacturing tools in America. No other manufacturer of hand tools and related products used in electrical applications makes more items in America than Klein Tools.

9. In July 2019, building on its legacy, Klein Tools released a new-generation hard hat system that was designed, engineered, and built with safety, comfort, and fit for the tradespeople who wear them every day. These new hard hats incorporated innovative features including accessory mounts. Klein Tools' press release identified the product as then "patent-pending." Ex. 2, Klein Tools'® New Hard Hats Designed for Pros–Safety, Comfort and Fit (July 23, 2019).




*Id.* at 1.

10. Since then, Klein Tools has continuously extended its hard hat system by introducing new hard hats and by introducing new accessory devices designed to be compatible with Klein Tools' innovative front and back accessory mounts, including headlamps, fans, and safety lamps.




Ex. 3, Klein Tools'® Innovative New Fan Takes Jobsite Cooling to the Next Level (Nov. 9, 2021).

11. On February 11, 2025, Klein Tools filed a complaint at the United States International Trade Commission ("the ITC Investigation"), asserting Milwaukee infringed three Klein Tools patents.

12. On April 11, 2025, Klein Tools sought to amend the ITC Investigation, asserting Milwaukee infringed the '265 Patent. Ex. 4, Klein Tools' Unopposed Motion for Leave to Amend

the Complaint and Notice of Investigation and Contingent Motion to Extend the Target Date by One Month. On June 5, 2026, Chief Administrative Law Judge Clark S. Cheney issued an Initial Determination finding certain Milwaukee safety helmet systems and components thereof infringe all claims of the '265 Patent, that Milwaukee had actual knowledge of its infringement of the '265 Patent no later than April 11, 2025, that Milwaukee induced infringement of the same claims, and that Milwaukee had the specific intent to encourage infringement. Ex. 5, Initial Determination, 105, 216.

**<u>THE '265 PATENT</u>**

13. On April 8, 2025, the United States Patent and Trademark Office ("USPTO") duly and legally issued U.S. Patent No. 12,268,265, entitled "Safety Helmet." Klein Tools owns the '265 Patent and possesses all rights of recovery under the '265 Patent. A true and accurate copy of the '265 Patent is attached hereto as Ex. 1.

14. The '265 Patent is valid and enforceable.

15. The '265 Patent is related to safety helmet technology. Safety helmets are commonly referred to as "hard hats." Ex. 1, '265 Pat. at 1:17–18. The invention of the '265 Patent relates to, among other things, a safety helmet with an outer shell, a front receptacle, a rear receptacle, and accessory device(s).

16. Milwaukee had knowledge of the '265 Patent at least as of April 8, 2025, the date of issuance of the '265 Patent.

17. Milwaukee has had actual knowledge of its infringement of the '265 Patent since no later than April 11, 2025 when Klein Tools provided Milwaukee with a claim chart mapping Milwaukee's infringing products to the claims of the '265 Patent.

## ACCUSED PRODUCTS

18. The ’265 Patent accused products include, but are not limited to, certain safety helmets, hard hats, and accessories of the Milwaukee BOLT™ System (“the Accused Bolt System”). The Accused Bolt System accessories include headlamps, batteries, headlamp mounts, face shields, eye visors, and sun visors.

19. The Accused BOLT System is designed to allow a user to “use multiple accessories at once” with a single hard hat. Ex. 6, Head Protection – BOLT Overview, Milwaukee Tool. An overview of the Milwaukee BOLT System is shown below:




The Milwaukee® BOLT™ System allows you to secure accessories simultaneously. Built on the Milwaukee® BOLT™ Helmets and Hard Hats, this versatile system allows you to use multiple accessories at once. If the job changes, you can quickly swap out accessories, providing you protection and efficiency on the jobsite. The Milwaukee® BOLT™ System allows you to secure accessories simultaneously, so you can STAY SAFE. STAY PRODUCTIVE.™

*Id.* at 1.

## FIRST CAUSE OF ACTION

### Infringement of the ’265 Patent by Milwaukee

20. Plaintiff realleges and incorporates each of the allegations in Paragraphs 1–19 above as though fully set forth herein.

21. Milwaukee makes, uses, sells, offers for sale, and/or imports the Accused Bolt System in the United States.

22. Milwaukee directly infringes—literally and/or under the doctrine of equivalents—at least claim 1 of the ’265 Patent in violation of 35 U.S.C. § 271(a) by making, using, selling, offering for sale, and/or importing into the United States the Accused Bolt System, as, for example, detailed in Ex. 7 (Exemplary Infringement Claim Chart for U.S. Patent No. 12,268,265), which is incorporated herein in its entirety.

23. Milwaukee had actual knowledge that the Accused Bolt System infringes the ’265 Patent no later than April 11, 2025 when Klein Tools provided Milwaukee with a claim chart mapping Milwaukee’s infringing products to the claims of the ’265 Patent. Accordingly, Klein Tools has complied with 35 U.S.C. § 287 as to the ’265 patent to the extent required by law.

24. Milwaukee also indirectly infringes at least claim 1 of the ’265 Patent in violation of 35 U.S.C. § 271(b) by actively inducing direct infringement by others.

25. Milwaukee has actively induced, and continues to induce, direct infringement of at least claim 1 of the ’265 Patent at least by its customers and/or end users with the specific intent that such customers’ and/or end users’ acts infringe at least claim 1 of the ’265 Patent.

26. Milwaukee has had actual knowledge that it was inducing infringement of the ’265 Patent since no later than April 11, 2025 when Klein Tools provided Milwaukee with a claim chart mapping Milwaukee’s infringing products to the claims of the ’265 Patent. Milwaukee’s knowledge as of that date that its actions induce infringement of the ’265 Patent was confirmed by Chief Administrative Law Judge Clark S. Cheney of the U.S. International Trade Commission in an Initial Determination that he issued on June 5, 2026, finding that the Accused Bolt System infringes all claims of the ’265 Patent and finding that Milwaukee and its personnel knew that making, using, offering for sale, and selling the Accused Bolt System would constitute infringement of the ’265 patent at least by April 11, 2025. Ex. 5, Initial Determination at 105 (“I

find that Milwaukee and its personnel did in fact know that making, using, offering for sale, and selling the combinations of Accused Headwear Products identified by Klein would constitute infringement of the ’265 patent at least by April 11, 2025, when Milwaukee saw that infringement specifically mapped out in claim charts.”).

27. Milwaukee has actively induced, and continues to induce, direct infringement of at least claim 1 of the ’265 Patent at least by its customers and/or end users with affirmative, clear inducement and actual knowledge that such customers’ and/or end users’ acts infringe at least claim 1 of the ’265 Patent.

28. For example, Milwaukee advertises its Accused Bolt System as providing the ability to “secure accessories simultaneously” and “use multiple accessories at once”:




The Milwaukee® BOLT™ System allows you to secure accessories simultaneously. Built on the Milwaukee® BOLT™ Helmets and Hard Hats, this versatile system allows you to use multiple accessories at once. If the job changes, you can quickly swap out accessories, providing you protection and efficiency on the jobsite. The Milwaukee® BOLT™ System allows you to secure accessories simultaneously, so you can STAY SAFE. STAY PRODUCTIVE.™

Ex. 6, Head Protection – BOLT Overview, Milwaukee Tool at 1 (Cropped & Highlighted).

29. The ability to secure accessories, and secure multiple accessories simultaneously, is a key selling point listed prominently for the safety helmets and hard hats in the Accused Bolt System. *See, e.g.:*

- Advanced Slip, Trip & Fall Protection
- IMPACT ARMOR™ Liner Delivers the Best Oblique Impact Protection† (utilizing RHEON™ Technology) †Based on impacts at a 45° angle at a speed of 6.5 M/s averaged across 16 testing locations around the full helmet circumference.
- BOLT™ System - Secure Accessories Simultaneously
- Protects Side and Top Impact
- Comfortable Padded Suspension
- Comfortable Fit - 5 Adjustable Buckles Chin Strap
- Adjustable swinging ratchet - better comfort
- Antimicrobial and moisture wicking Sweat Band and Helmet Liner
- Machine washable sweat band, helmet liner and chin strap
- Includes a BOLT™ Headlamp Mount that works with most headlamps and a BOLT™Marker Clip for easy access to pens and markers
- ANSI/ISEA Z89.1 Type 2 Class C
- Meets EN12492:2012
- Made in USA With Global Materials
- Accurate Stripping. Easy Adjustment
- Third-Party Tested and Certified



Ex. 6, Head Protection – BOLT Overview, Milwaukee Tool at 2 (Highlighted).

30. Bolt accessories, like the BOLT™ REDLITHIUM™ USB Headlamp, are advertised as "a dedicated solution for [Milwaukee's] BOLT™ hats and helmets":

**Product Overview**

Our BOLT™ REDLITHIUM™ Headlamp is a dedicated solution for our BOLT™ hard hats and helmets and is fully compatible with all BOLT™ accessories. Powered by REDLITHIUM™ USB this headlamp provides HIGH OUTPUT™ lighting that stays brighter for longer. The MILWAUKEE® BOLT™ headlamp offers an ultra-thin light head that allows for full functionality of any BOLT™ Face shield and visor. The headlamp delivers 600 lumens of TRUEVIEW™ High Definition Flood Lighting paired with a 70° pivoting light head for full illumination for any task. Our rechargeable headlamp is designed with the cam lock mounted battery pack in the rear for maximum maneuverability and security in tight spaces and a balanced design for all-day use. The Milwaukee headlamp has four light output modes: High, Medium, Low, and Eco for 32 hours of runtime to maximize light output or extend runtime. The light is IP54 rated for water and dust resistance and can withstand up to 2M drops, surviving the toughest conditions on and off the jobsite. The MILWAUKEE® REDLITHIUM™ USB Battery can be recharged in the headlamp via USB-C or swapped out with additional REDLITHIUM™ USB Batteries for virtually no downtime. The BOLT™ Headlamp is covered by a limited lifetime warranty.

Ex. 8, Milwaukee 2118-21 Product Page & Images at 1 (Highlighted).

31. Additional headlamp mount devices are sold and included in the Bolt System that are designed to allow "users to Secure Accessories Simultaneously":

**Product Overview**

Our BOLT™ Low-Profile Headlamp Mount allows headlamp compatibility with BOLT™ eye visors and select BOLT™ full face shields. The mount is reversible and secures into the Front or Rear BOLT™ Mount of your MILWAUKEE® head protection for added convenience. The BOLT™ Low-Profile Headlamp Mount works with Milwaukee and most other professional brand headlamps. All MILWAUKEE® safety helmets and hard hats are BOLT™ compatible. This low-profile headlamp mount is part of the BOLT™ accessory system which allows users to Secure Accessories Simultaneously.

Ex. 9, Milwaukee 48-73-1094 Product Page & Images (Highlighted); *see also* Ex. 10, Grainger Listing for Hard Hat Headlamp Mount (48-73-1090).

32. Milwaukee actively induces others to infringe at least claim 1 of the ’265 Patent at least through the sale of, advertisements for, and instructions for the Accused Bolt System to customers in the United States.

33. For example, The Home Depot sells the Accused Bolt System in the United States:




Ex. 11, Bolt White Type 1 Class C Front Brim Vented Hard Hat with 4 Point Ratcheting Suspension, The Home Depot. Milwaukee lists on its website other U.S. retailers for the Accused Bolt System including Acme Tools, ToolUp, Zoro.com, Grainger, and Ohio Power Tool. Ex. 12, 48-73-1200, Where to Buy, Milwaukee Tool.

34. Milwaukee creates and distributes promotional and product literature for the Accused Bolt System that is designed to instruct, encourage, enable, and facilitate the use, sale, and offer for sale of the Accused Bolt System in a manner that intentionally encourages customers to directly infringe at least claim 1 of the '265 Patent.

35. For example, the Operator's Manual for Milwaukee's Jobsite Safety Helmets demonstrates an exemplary use of Milwaukee's infringing Accused Bolt System with an accessory mounted into the front or back slot. *See, e.g.*:

**Using the Head Lamp Clip**

1. To install a head lamp, remove manufacturer's head-band from the light.
2. From the back of the clip, unstrap the hook and loop strapping.
3. Loop the strapping through the light and refasten on the clip.
4. Slide the accessories into the front or back slot. The accessory should "click" into place.
5. Pull on the accessory to ensure it is locked in.
6. To remove, squeeze the ends of the accessory together and slide off of the helmet.

Ex. 15, 58-22-1300d4 (Milwaukee Jobsite Safety Helmets Manual) at 2 (Highlighted).

36. On information and belief, Milwaukee provides such promotional materials advertising the Accused Bolt System to its retailer customers and distributors and supports them in selling and offering to sell the Accused Bolt System. *See, e.g.*:




Ex. 16, BOLT™ Front Brim Safety Helmet with IMPACT ARMOR™ Liner Product Page & Images;




*Id.*;




Ex. 17, Milwaukee® BOLT™ Head Protection and Accessories, https://www.youtube.com/watch?v=ZO5rF2p0rWQ at 0:26.

37. Milwaukee has actively encouraged and instructed retailers like The Home Depot to sell and offer to sell the Accused Bolt System in an infringing manner and has provided assistance to help such retailers do so. For example, Milwaukee employs sales representatives to demonstrate and encourage the use of the Accused Bolt System in stores by taking safety helmets and hard hats and mounting one or more accessories on them in an infringing manner. Milwaukee was still undertaking such efforts as of August 8, 2025, nearly four months after Klein Tools provided Milwaukee with a claim chart mapping Milwaukee's infringing products to the claims of the '265 Patent, and on information and belief, Milwaukee continues to do so to this day.

38. Reviews on Milwaukee's website show that Milwaukee's active steps to encourage direct infringement at least through the sale of, advertisements for, and instructions for the Accused

Bolt System to customers in the United States have, in fact, induced its customers and end-users to infringe at least claim 1 of the ’265 Patent. *See, e.g.*:

vinceg
La Verne, CA
Review 1
Votes 10
Skill Level: Owner / Operator

★★★★★
**The headlamp system works great on BOLT hardhats!**
a year ago
I am not sure what the one star review people are talking about with respect to the cord being too short. I bought this USB headlamp for my BOLT hardhat and the light clipped onto the front of my hardhat perfectly. The battery clipped on to the back of the helmet perfectly. And the cord between the light and the battery reaches around the side of the hardhat perfectly. Just like the picture on the Milwaukee website. The light has worked great and the battery will last most of the day on medium setting. Maybe they are not using the BOLT type hardhat.

Yes, I recommend this product.



Helpful? (10) (0) Report

Ex. 8, Milwaukee 2118-21 Product Page, Reviews at 3 (Highlighted);

★★★★★ Jul 5, 2026
**Lightweight, easy to install fan that provides excellent airflow to keep you comfortable**
[This review was collected as part of a promotion.] The Milwaukee BOLT REDLITHIUM USB Cooling Fan is one of those accessories you don’t realize you need until you use it. I used it in a Milwaukee hardhat and it installed quickly and securely. It was also easy to remove. It’s definitely adds a little bit of weight so be prepared for that. The battery lasts a full day if you keep the fan on the lowest speed. Don’t expect much more than that. It comes with a usb c charging cable and three different attachments. All said, it’s helpful on hot days but I’d buy a couple extra batteries and keep them charged.
by DanS




Customer review from milwaukeetool.com

Ex. 14, BOLT REDLITHIUM USB Cooling Fan, Reviews at 4 (Highlighted).

39. Milwaukee has induced and continues to induce such infringing acts knowing that its actions would induce direct infringement of the ’265 Patent, or acted with willful blindness.

40. As explained above, Milwaukee had actual knowledge of the ’265 Patent and actual knowledge that its actions induce patent infringement at least as of April 11, 2025 when Klein Tools provided Milwaukee with a claim chart mapping Milwaukee’s infringing products to the claims of the ’265 Patent in violation of 35 U.S.C. § 271(a) and (b).

41. Milwaukee’s knowledge of the infringement of the ’265 Patent, and its continued making, sale, offer for sale, and/or importation of the Accused Bolt System constitutes

infringement as well as active inducement of others to infringe the ’265 Patent in violation of 35 U.S.C. § 271(a).

42. For similar reasons at least as of April 11, 2025, Milwaukee’s infringement has been willful, and the Court should award treble damages pursuant to 35 U.S.C. § 284.

43. Milwaukee acted with wanton and deliberate disregard of its infringement. After Klein Tools designed its products and after the priority application that led to the ’265 Patent was filed, Milwaukee visited a manufacturer, saw a non-public prototype of Klein Tools’ innovative products, took photographs of Klein Tools’ prototype, and then replicated Klein’s innovative features in the Accused Bolt System.

44. Specifically, in 2018, Home Depot asked Milwaukee to develop hard hats for Home Depot stores and Milwaukee immediately launched an effort to quickly generate a helmet design. In an effort to learn about and develop a viable hard hat for Home Depot, in September 2018, Milwaukee personnel visited a helmet manufacturer. During that visit, Milwaukee gained unauthorized access to Klein Tools’ confidential, not yet released, prototype which would later launch as Klein Tools’ next-generation hard hat system.

45. During the visit, half-a-dozen Milwaukee employees viewed, handled, operated, and studied the design and functions of Klein Tools’ new product. Additionally, one of the visiting Milwaukee employees photographed Klein Tools’ prototype and circulated the photographs to members of Milwaukee’s hard hat design team, resulting in at least a dozen Milwaukee employees involved in Milwaukee’s hard hat design receiving these photographs.

46. After seeing Klein Tools’ prototype, Milwaukee abandoned its prior design and instead incorporated a vertical external slot design with a protruding nub to safely and securely attach and detach accessories to the front and back of its BOLT hard hats. And Milwaukee’s chief

industrial designer admitted that seeing Klein Tools' prototype may have influenced his design of the BOLT system.

47. Further, even after Chief Administrative Law Judge Clark S. Cheney issued an Initial Determination on June 5, 2026 finding that the Accused Bolt System infringes all claims of the '265 Patent, Milwaukee continued to act with wanton and deliberate disregard of its infringement by continuing to make, use, offer for sale, and sell the Accused Bolt System, and to clearly and affirmatively induce its customers and end-users to directly infringe the claims of the '265 Patent.

48. The Accused Bolt System continues to appear on Milwaukee's and its customers' websites. *See, e.g.*, Ex. 6, Head Protection – BOLT Overview, Milwaukee Tool; Ex. 8, Milwaukee 2118-21 Product Page & Images; Ex. 13, 48-73-1200 Product Page; Ex. 11, Bolt White Type 1 Class C Front Brim Vented Hard Hat with 4 Point Ratcheting Suspension, The Home Depot; Ex. 15, 58-22-1300d4 (Milwaukee Jobsite Safety Helmets Manual) at 2. Milwaukee continues to distribute promotional and product literature for the Accused Bolt System that is designed to instruct, encourage, enable, and facilitate the use, sale, and offer for sale of the Accused Bolt System in a manner that intentionally encourages customers to directly infringe at least claim 1 of the '265 Patent.

49. Milwaukee continues to develop, advertise and sell new accessories for the Accused Bolt System, such as the BOLT™ REDLITHIUM™ USB Cooling Fan. Ex. 22 (BOLT™ REDLITHIUM™ USB Cooling Fan, Facebook). Milwaukee's website indicates a new accessory, the BOLT™ Personal Voltage Detector for the Accused Bolt System, is "coming soon." *See* Ex. 23 (Milwaukee 48-73-2895 Product Page).

50. On information and belief, Milwaukee has not attempted to change its infringing design and instead continues to infringe the ’265 Patent.

51. Milwaukee’s infringement of the ’265 Patent has damaged and will continue to damage Klein Tools.

52. Unless and until enjoined by this Court, Milwaukee will continue to infringe the ’265 Patent. Milwaukee’s infringing acts are causing and will continue to cause at least Klein Tools irreparable harm, for which there is no adequate remedy at law. Under 35 U.S.C. § 283, Klein Tools is entitled to a permanent injunction against further infringement.

53. This case is exceptional, entitling Klein Tools to an award of attorneys’ fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## **DEMAND FOR JURY TRIAL**

54. Klein Tools respectfully requests a jury trial on any issues so triable by right.

## **PRAYER FOR RELIEF**

55. WHEREFORE, Klein Tools respectfully requests that this Court enter judgment in its favor and grant the following relief:

A. A judgment that Milwaukee directly and indirectly infringes the ’265 Patent;

B. An order permanently enjoining Milwaukee, its affiliates and subsidiaries, and each of its officers, agents, servants, and employees and those acting in privity or concert with them, from making, offering to sell, selling, using, or importing into the United States systems claimed in any of the claims of the ’265 Patent, and from inducing others to make, offer, sell, use, or import into the United States articles that infringe any claim of the Patents-in-Suit, until after the expiration of the ’265 Patent, including any extensions and/or additional periods of exclusivity to which Klein Tools is or becomes entitled;

C. An order awarding damages under 35 U.S.C. §§ 154 & 284 in an amount sufficient to compensate Klein Tools for its damages arising from infringement by Milwaukee, including, but not limited to, lost profits and/or a reasonable royalty;

D. A judgment that Milwaukee's infringement of the '265 Patent was and continues to be willful and an order awarding Plaintiff treble damages under 35 U.S.C. § 284;

E. A judgment and order requiring Milwaukee to pay Klein Tools the prejudgment and post-judgment interest to the fullest extent allowed under the law, as well as its costs;

F. An order finding that this is an exceptional case and awarding Klein Tools its reasonable attorneys' fees pursuant to 35 U.S.C. § 285; and

G. Such other relief as the Court may deem appropriate and just under the circumstances.

*<u>/s/ Kelly E. Farnan</u>*
Kelly E. Farnan (#4395)
Richards, Layton, & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801
(302) 651-7700
farnan@rlf.com

*Counsel for Plaintiff Klein Tools, Inc.*

OF COUNSEL:

Greg S. Arovas, P.C.
Ryan Kane, P.C.
Alan Rabinowitz
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800
garovas@kirkland.com
ryan.kane@kirkland.com
alan.rabinowitz@kirkland.com

Paul F. Brinkman, P.C.
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
(202) 389-5000
paul.brinkman@kirkland.com

Dated: August 26, 2026